**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Victor Twal, individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>          v.<br><br>Target Corporation,<br><br>           Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Victor Twal (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

### NATURE OF THE ACTION

1.　　This action seeks to remedy the deceptive and misleading business practices of Target Corporation (hereinafter "Defendant") with respect to the marketing and sale of Defendant's Up & Up Maximum Strength Gas Relief Simethicone Softgels 250mg Product throughout the state of New York and throughout the country (hereinafter the "Product"). The active ingredient in the product is Simethicone 250mg.

2.　　Simethicone is used to relieve painful pressure caused by excess gas in the stomach and intestines.[1]

3.　　Defendant manufactures, sells, and distributes the Product using a marketing and advertising campaign that represents that the Product is "maximum strength."

4.　　As depicted below, Defendant claims that the Product is "maxium strength."

---

[1] https://www.drugs.com/mtm/simethicone.html



5.      A reasonable consumer would conclude that a Simethicone product labeled as "maximum strength" would contain the maximum amount of Simethicone available in pill form.

6.      However, Defendant's claims, representations, and warranties are false and misleading.

7.      Defendant's "maximum strength" claim is false and deceptive because Simethicone is available in other over-the-counter products at doses higher than 250mg, including up to 500mg.

8.    Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentation that the Product is "maximum strength" when purchasing and administering the Product.    Plaintiff and Class Members paid a premium for the Product based upon this representation.    Given that Plaintiff and Class Members paid a premium for a Product based on Defendant's misrepresentation that the Product is "maximum strength," Plaintiff and Class Members suffered an injury in the amount of the premium paid.

9.    Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, and the express warranty laws of New York and other states around the country.    Defendant breached and continues to breach its warranties regarding the Product.    Defendant has been and continues to be unjustly enriched.    Accordingly, Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

10.    Defendant falsely markets its Product as being "maximum strength."    Despite this representation, Defendant's Product is not "maximum strength."

11.    Reasonable customers, including Plaintiff and Class Members, believe that a Product that is marketed as being "maximum strength" is, the maximum strength available. However, the Product is not "maximum strength."

12.    When consumers purchase Simethicone products the strength of the dose is an important consideration.    Thus, consumers are willing to pay a price premium for Simethicone that has higher doses.

13.    Additionally, reasonable customers also believe that when a product is represented as "maximum strength" that there are no comparable products on the market that contain a greater

dose. Thus, Defendant deceives reasonable consumers, like Plaintiff, into believing that they are purchasing the product with the most Simethicone when there are other competitor prescription products available on the market that contain a higher dose of Simethicone.

14.    Despite all of this, Defendant continues to make the representations that the Product is "maximum strength" even though it is not.

## PLAINTIFF'S CLAIMS

15.    Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentation that the Product is "maximum strength" when purchasing the Product. Plaintiff and other Class Members also believed that these claims were supported. Absent this misrepresentation, Plaintiff and Class Members would not have purchased the Product. Given that Plaintiff and Class Members paid for a Product they would not otherwise have purchased and/or paid a premium for the Product based on Defendant's misrepresentation, Plaintiff and Class Members suffered an injury in the amount of the purchase price of the Product and/or premium paid.

16.    Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, and the consumer protection statutes of all 50 states. Defendant breached and continues to breach its express and implied warranties regarding the Product. Defendant has been and continues to be unjustly enriched. Accordingly, Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period").

17.    Through its deceptive advertising and representations, Defendant has violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such

an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article, which to their knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

18.     Consumers rely on marketing and information in making purchasing decisions.

19.     By marketing the Product as being "maximum strength," Defendant knows that this claim is material to consumers.

20.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions, since the Product does not provide the represented maximum strength Simethicone.  Further, Defendant's misrepresentation is deceiving as there are competitor Simethicone products that provide more Simethicone than Defendant's "maximum strength" Product.

21.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions because they purchased something of no value.

22.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

23.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for products marketed as "maximum strength" over comparable products not so marketed.

24.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they:

a.     Paid a sum of money for a Product that was not what Defendant represented;

b.     Paid a premium price for a Product that was not what Defendant represented;

c.     Were deprived of the benefit of the bargain because the Product they purchased was different from what Defendant warranted;

d.     Were deprived of the benefit of the bargain because the Product they purchased had less value than what Defendant represented;

e.     They ingested a substance that was of a different quality than what Defendant promised; and

f.     Were denied the benefit of the properties of the Product Defendant promised.

25.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Product they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Product.

26.     Plaintiff and the Class Members paid for a Product that is "maximum strength" and that they believed actually was.  The Product Plaintiff and the Class Members received was worth less than the Product for which they paid.

27.     Plaintiff and the Class Members all paid money for the Product; however, Plaintiff and the Class Members did not obtain the full value of the advertised Product due to Defendant's misrepresentation and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Product than they would have had they known the truth about the Product.

Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

28.     Plaintiff and Class Members read and relied on Defendant's representation about the benefits of using the Product, and purchased Defendant's Product based thereon.  Had Plaintiff and Class Members known the truth about the Product, i.e., that it does not have the benefit it says it does (i.e. "maximum strength") they would not have been willing to purchase it at any price, or, at a minimum would have paid less for it.

## JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Defendant is a citizen of New York and many members of the class of plaintiffs are citizens of states other than New York; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

30.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

31.     Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

**Plaintiff**

32.    Plaintiff, Victor Twal is an individual consumer who, at all times material hereto, was a citizen of New York State, residing in Dutchess County, New York.  Plaintiff purchased the Product in person at a brick and mortar Target store in New York during the class period.

33.    Prior to purchasing the Product, Plaintiff read the Product's marketing.  The claims of the Product Plaintiff purchased contained the representation that it is "maximum strength." Plaintiff purchased the Product in reliance on Defendant's representation that the Product is "maximum strength."  Plaintiff also relied on the "maximum strength" representation by believing the proper dosages were present in the Product to be deemed as "maximum strength."  Plaintiff believes that products that claim to be "maximum strength" are actually "maximum strength."

34.    Had Defendant not made the false, misleading, and deceptive representation that the Product was "maximum strength" Plaintiff would not have been willing to pay the same amount for the Product, and, consequently, would not have been willing to purchase the Product. Plaintiff purchased, purchased more of, and paid more for the Product than he would have had he known the truth about the Product.  The Product Plaintiff received was worth less than the Product for which he paid.  Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

35.    Defendant Target Corporation is a corporation with its principal place of business in Minnesota.  Defendant is authorized to do business in New York.  Defendant distributes its products, including the Product, throughout the United States.  Defendant's Product is available at retail stores throughout New York and the United States.

36.     Defendant manufactures, markets, advertises, and distributes the Product throughout the United States.  Defendant created and/or authorized the false, misleading, omitting, and deceptive advertisements, packaging, and labeling of its Product.

## CLASS ALLEGATIONS

37.     Plaintiff brings this matter on behalf of himself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and representation practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

38.     The Class is defined as all consumers who purchased the Product anywhere in the United States during the Class Period (the "Class").

39.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Product in the state of New York at any time during the Class Period (the "New York Subclass").

40.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

41.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

42.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

43.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.      Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Product;

b.      Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Product;

c.      Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Product;

d.      Whether Defendant's false and misleading statements concerning its Product were likely to deceive the public;

e.      Whether Plaintiff and the Class are entitled to injunctive relief; and

f.      Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

44.     <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Product.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

45.     <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer fraud claims are common to all members of the Class and he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

46.     <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the

Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and representation practices.

47.     Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.      The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.      The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.      When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.      This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.      Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.      This class action will assure uniformity of decisions among Class Members;

g.      The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.      Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.      It would be desirable to concentrate in this single venue the litigation of all class members who were induced by Defendant's uniform false advertising to purchase its Product that is "maximum strength."

48.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

49.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

50.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

51.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, representing, marketing, and promoting the Product and from charging consumers monies in the future.

52.     Defendant misleadingly, inaccurately, and deceptively advertise and market the Product to consumers.

53.     Defendant's improper consumer-oriented conduct (including advertising the Product as being "maximum strength") is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Product and to use the Product when they otherwise would not have.  Defendant made its untrue

and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

54.    Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for a Product that (contrary to Defendant's representations) is not "maximum strength."  Plaintiff and the New York Subclass Members also relied to their detriment on the "maximum strength" representation by believing the proper dosages were present in the Product to be deemed as "maximum strength" even though they were not.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

55.    Defendant's advertising and Product's representations induced Plaintiff and the New York Subclass Members to buy Defendant's Product and to pay a premium price for it.

56.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

57.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory damages of $50 per unit sold, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and the New York Subclass Members)

58.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

59.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

60.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

61.    Defendant's representations and advertisements contain untrue and materially misleading statements concerning Defendant's Product inasmuch as they misrepresent that the Product is "maximum strength."

62.    Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the representations and advertising and paid a premium for the Product which (contrary to Defendant's representations) is not "maximum strength."  Plaintiff and the New York Subclass Members also relied to their detriment on the "maximum strength" representation by believing the proper dosages were present in the Product to be deemed as "maximum strength" even though they were not.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

63.     Defendant's advertising and Product's representations induced Plaintiff and the New York Subclass Members to buy Defendant's Product.

64.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

65.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

66.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising and representations.

67.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Product were and continue to be exposed to Defendant's material misrepresentations.

68.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory damages of $500 per unit sold, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

69.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

70.     Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Product is "maximum strength."

71.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

72.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class Members' transactions.

73.     Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Product.

74.     Within a reasonable time after they knew or should have known, Defendant did not correct its Product's marketing and labeling to reflect the true nature of the Product's capabilities.

75.     Plaintiff provided Defendant with written notice of this breach of express warranty on March 13, 2024.

76.     Defendant thereby breached the following state warranty laws:

a.      Code of Ala. § 7-2-313;

b.      Alaska Stat. § 45.02.313;

c.      A.R.S. § 47-2313;

d.      A.C.A. § 4-2-313;

e.      Cal. Comm. Code § 2313;

f.      Colo. Rev. Stat. § 4-2-313;

g.      Conn. Gen. Stat. § 42a-2-313;

h.      6 Del. C. § 2-313;

i.      D.C. Code § 28:2-313;

j.      Fla. Stat. § 672.313;

k.      O.C.G.A. § 11-2-313;

l.      H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

    ii.       II. O.R.C. Ann. § 1302.26;

    jj.       12A Okl. St. § 2-313;

    kk.      Or. Rev. Stat. § 72-3130;

    ll.       13 Pa. Rev. Stat. § 72-3130;

    mm.   R.I. Gen. Laws § 6A-2-313;

    nn.      S.C. Code Ann. § 36-2-313;

    oo.      S.D. Codified Laws, § 57A-2-313;

    pp.      Tenn. Code Ann. § 47-2-313;

    qq.      Tex. Bus. & Com. Code § 2.313;

    rr.       Utah Code Ann. § 70A-2-313;

    ss.       9A V.S.A. § 2-313;

    tt.       Va. Code Ann. § 59.1-504.2;

    uu.      Wash. Rev. Code Ann. § 6A.2-313;

    vv.      W. Va. Code § 46-2-313;

    ww.   Wis. Stat. § 402.313;

    xx.      Wyo. Stat. § 34.1-2-313.

77.    Defendant breached the express warranty because the Product is not "maximum strength."

78.    As a direct and proximate result of Defendant's breach of the express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Product, in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and All Class Members in the Alternative)

79.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

80.    Plaintiff, on behalf of himself and consumers nationwide, brings a claim for unjust enrichment.

81.    Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Product while misrepresenting and omitting material facts.

82.    Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Product at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment.  Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

83.    Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Product, which was not as Defendant represented it to be.

84.    Under New York's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

85.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## FIFTH CAUSE OF ACTION
### NEGLIGENCE PER SE
**(On Behalf of Plaintiff and All Class Members)**

86.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

87.     Violation of a statute constitutes per se negligence where it can be shown that plaintiff belongs to the class of legislatively intended beneficiaries and that a right of action would be clearly in furtherance of the legislative purpose.

88.     Defendant is liable for negligence per se due to its violation of the Food Drug and Cosmetics Act (21 U.S.C. § 331(b)) which prohibits the misbranding of any drug item.

89.     Pursuant to 21 U.S.C. § 352, a drug is deemed "misbranded" if its "labeling is false or misleading in any particular." The Product is "misbranded" because its labeling contains the affirmative misrepresentation detailed herein which represents that the product is "maximum strength" when higher strength Simethicone products are available, including over-the-counter.

90.     The FDCA are designed to protect consumers like Plaintiff from drugs which are labeled in a deceptive manner. Accordingly, Defendant's violations of these statutes subject it to liability for negligence per se under New York law.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Awarding monetary damages and treble damages;

(c) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(d) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(e) Awarding punitive damages;

(f) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.

Dated: October 9, 2024

**SULTZER & LIPARI, PLLC**

/s/ Jason P. Sultzer

By: _____

Jason P. Sultzer, Esq.
Philip Furia, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
furiap@thesultzerlawgroup.com


Nick Suciu III, Esq.
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
nsuciu@milberg.com

*Counsel for Plaintiff and the Class*
